UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>JOEL CONRAD SCHMITZ,<br><br>Defendant. | Case No. 16-CR-280 (SRN)<br><br><br>**MEMORANDUM OPINION AND ORDER** |

Laura M. Provinzino, United States Attorney's Office, 300 South 4th St., Ste. 600, Minneapolis, MN 55415, for Plaintiff.

Joel Conrad Schmitz, # 20938-041, FCI Pekin, PO Box 5000, Pekin, IL 61555, Pro Se.

SUSAN RICHARD NELSON, United States District Judge

**I.  INTRODUCTION**

This matter is before the Court on Defendant Joel Conrad Schmitz's Motion to Vacate under 28 U.S.C. § 2255 [Doc. No. 33].[1] In addition, Defendant has filed a Request for Subpoena [Doc. No. 48] as well as a Motion for Appointment of Counsel [Doc. No. 49]. Based on a review of the file, record and proceedings therein, and for the reasons set forth below, the Court denies Defendant's Motion to Vacate under § 2255, and denies as moot his Motion for Appointment of Counsel and his Request for a Subpoena.

---

[1] Although Schmitz is the petitioner in this motion, because the current filings are found in the underlying criminal docket, the Court refers to him as "Defendant" or "Schmitz" throughout this ruling.

1

## II. BACKGROUND

In approximately 2014 and 2015, Schmitz was charged in Meeker County, Minnesota, with state court criminal sexual conduct offenses.[2] (*See* Def.'s Mem., Ex. 2 (Dec. 16, 2015 Letter at 1–2 [Doc. No. 34-1]).) It appears that the parties were about to enter into a plea agreement in early 2016, but an agreement was not reached. (*Id.*)

While the Meeker County charges were still pending, in April 2016, Schmitz received notice that he had been designated as a target of a federal investigation involving the production of child pornography. (*Id.*, Ex. 4 (April 1, 2016 Letter at 1 [Doc. No. 34-1].) On October 14, 2016, Schmitz was charged in federal court by information on one count of production of child pornography in violation of 18 U.S.C. § 2251.

On November 21, 2016, Schmitz entered a guilty plea in this Court pursuant to a plea agreement (the "Plea Agreement"). (*See* Nov. 21, 2016 Minute Entry [Doc. No. 6].) The Plea Agreement provided that Schmitz waived his right to appeal if the Court imposed a sentence of 180 months of imprisonment. (Plea Agmt. ¶ 13 [Doc. No. 10].) If, however, the Court imposed a longer sentence, Schmitz preserved his right to appeal. Also, Schmitz expressly waived the right to petition for relief under 28 U.S.C. § 2255. (*Id.*) That waiver, however, did not apply to a post-conviction collateral attack or a direct appeal based on a claim of ineffective assistance of counsel. (*Id.*)

On June 30, 2017, the Court sentenced Schmitz to a term of 180 months in prison. (*See* June 30, 2017 Minute Entry [Doc. No. 30]; Sentencing J. [Doc. No. 31].) Schmitz did

---

[2] Schmitz was charged with similar offenses in Adams County, Illinois, and Renville County, Minnesota.

not file a direct appeal. On June 11, 2018, he timely filed the instant pro se motion to vacate under 28 U.S.C. § 2255.

## III. DISCUSSION

Under 28 U.S.C. § 2255(a),

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

While § 2255 generally affords relief, it is only available in limited circumstances. The Eighth Circuit has held that:

> "[r]elief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and, if uncorrected, would result in a complete miscarriage of justice." ... [A petitioner] may not raise a constitutional issue in the first instance on collateral review "without establishing both cause for the procedural default and actual prejudice resulting from the error."

*Walking Eagle v. United States*, 742 F.3d 1079, 1081–82 (8th Cir. 2014) (quoting *United States v. Apfel*, 97 F.3d 1074, 1076 (8th Cir. 1996)). The petitioner bears the burden of proof as to each ground for relief. *Kress v. United States*, 411 F.2d 16, 20 (8th Cir. 1969).

In his § 2255 motion, Schmitz asserts the following claims: (1) that the Government selectively prosecuted him on the basis of his sexual orientation; (2) that the Government vindictively prosecuted him; and (3) that he received ineffective assistance of counsel. (*See* Def.'s Mem. at 1–2; 25–27 [Doc. No. 34].)

As noted, Schmitz waived his right to collaterally attack his sentence except for claims of ineffective assistance of counsel. (Plea Agmt. ¶ 13.) Although plea agreement

3

waivers are generally valid, they "will be strictly construed and any ambiguities in these agreements will be read against the Government and in favor of a defendant's appellate rights." *United States v. Andis*, 333 F.3d 886, 890 (8th Cir. 2003) (citing *United States v. Hernandez*, 242 F.3d 110, 113 (2d Cir. 2001)).

As a threshold matter, the Court agrees with the parties that Schmitz's guilty plea does not, in this case, bar him from asserting a claim of vindictive prosecution. As recently stated by the Eighth Circuit, prosecutorial vindictiveness that goes "to the very power of the State to bring the defendant into court" is an exception to the general rule that "[a] defendant's knowing and intelligent guilty plea forecloses independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." *United States v. Muratella*, 843 F.3d 780, 783 (8th Cir. 2016), *cert. denied*, 137 S. Ct. 1605 (2017) (quoting *United States v. Vaughan*, 13 F.3d 1186, 1187–88 (8th Cir. 1994)). As this claim goes directly to the power of the U.S. Attorney's Office to bring Schmitz into federal court, it falls within this exception, and the Court addresses it separately.

While Schmitz also asserts a free-standing claim of selective prosecution, one of the bases for his ineffective assistance claim is that his counsel failed to address selective prosecution. (*See* Def.'s Mem. at 26.) Although Schmitz may have waived the right to assert an independent post-conviction claim of selective prosecution, the Court examines the underlying merits of this claim in its analysis of the ineffective assistance of counsel claims.

A. **Ineffective Assistance of Counsel**

Schmitz argues that he received ineffective assistance of counsel in four respects.

4

(*Id.* at 25–26.) Schmitz contends that: (1) he was "misled into accepting a plea"; (2) his counsel failed to appropriately inform him of all of his appellate options; (3) his counsel failed to challenge the alleged selective prosecution; and (4) his counsel failed to challenge federal jurisdiction. (*Id.*).

Within the context of § 2255, to establish ineffective assistance of counsel, a movant must satisfy the "heavy burden" of the two-part test of *Strickland v. Washington*, 466 U.S. 668 (1984). *Apfel*, 97 F.3d at 1076. Under *Strickland*, "a convicted defendant must prove both that his counsel's representation was deficient and that the deficient performance prejudiced the defendant's case." *Cheek v. United States*, 858 F.2d 1330, 1336 (8th Cir. 1988). This deficient performance must be "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687. A defendant must show that counsel's errors were not the result of "reasonable professional judgment." *Id*. at 690.

Meeting the first prong of *Strickland* requires proof that counsel's performance "fell below an objective standard of reasonableness." *Id*. at 688. The second element requires showing that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. In a case involving a plea agreement, this requires a showing that "there is a reasonable probability that, but for counsel's errors, [he] would not have pleaded guilty and would have insisted on going to trial." *York v. Lockhart*, 856 F.2d 61, 63 (8th Cir. 1988) (quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)). A court's review of counsel's performance is highly deferential, and there is a strong presumption of adequate assistance. *Strickland*, 466 U.S. at 690.

### 1. "Misled Into Accepting Plea"

The claim that Schmitz was "misled into accepting a plea" is belied by the clear language of the Plea Agreement, signed by Schmitz, and referenced above. *See United States v. Michelsen*, 141 F.3d 867, 871–72 (8th Cir. 1998) (finding appeal waiver was knowing and voluntary, even though it only appeared in the plea agreement and was not part of colloquy with court).

Moreover, Schmitz's testimony, given under oath at the change of plea hearing, demonstrates his understanding of entering a guilty plea. At three points during the hearing, he unequivocally stated that he understood the possible sentencing range. (Nov. 21, 2016 Hr'g Tr. at 12–13, 17, 20 [Doc. No. 55]). In addition, the Court encouraged Schmitz to speak with his attorney at any time prior to answering questions from the Court, and to ask for clarification if he did not understand any of the questions. (*Id.* at 3.) Schmitz indicated that he had had a full opportunity to discuss with his attorney, Steven Wolter, the charge against him, as well as the Plea Agreement, and that he was satisfied with Wolter's services. (*Id.* at 4–6; 14.) Wolter likewise stated that he believed Schmitz understood the charge against him and the range of punishment, and that Schmitz was competent to enter a guilty plea. (*Id.* at 6.) Schmitz also disavowed that his guilty plea resulted from any force, threats, coercion, or violence against him. (*Id.* at 39.) To the contrary, he agreed that his guilty plea was voluntarily made:

> Court: Mr. Schmitz, again, are you making this plea voluntarily and of your own free will?
>
> Defendant: Yes, I am, Your Honor.

> Court: Has anyone forced you, coerced you, done any violence to you or your family to get you to plead guilty?
>
> Defendant: No, Your Honor.

(*Id.*)

Further, a letter submitted by Schmitz from Wolter demonstrates that Wolter advised Schmitz about various aspects of a potential plea in depth, including the effect of a plea on sentencing. (Def.'s Mem., Ex. 5 (June 10, 2016 Letter at 4–6 [Doc. No. 34-1]).) Schmitz does not identify how he was misled. Nor does he claim that had he understood the aspects of the Plea Agreement fully, he would have rejected it and chosen to go to trial. *York*, 856 F.2d at 63.

These facts demonstrate a knowing and voluntary guilty plea, and completely fail to support Schmitz's claim that he was somehow misled into pleading guilty. The Court finds no deficient representation, nor any prejudice to Schmitz on this basis.

**2. Counsel's Alleged Failure to Advise of Appeal Rights**

Schmitz's claim that Wolter did not inform him of all of his appellate options also fails to establish ineffective assistance of counsel. In a July 6, 2017 letter from Wolter to Schmitz, attached to Schmitz's Memorandum, Wolter acknowledges, "This will confirm that you have informed me several times that you do not wish to file an appeal." (Def.'s Mem., Ex. 14 (July 6, 2017 Letter at 1–2 [Doc. No. 34-1]).) However, Schmitz argues that Wolter's letter only addressed a direct appeal, and failed to inform him of his collateral appeal rights. (Def.'s Mem. at 26.)

Regardless of the letter, the Plea Agreement signed by Schmitz explicitly notes

7

Schmitz's right to bring a post-conviction collateral attack based on a claim of ineffective assistance of counsel. (Doc. No. 10 ¶ 13.) Schmitz was fully on notice of his ability to file a collateral challenge, subject to the limitations of the Plea Agreement. Further, Schmitz was informed of his appellate options and waivers at the hearing on his change of plea, including his right to bring a collateral attack for ineffective assistance of counsel such as the one presently before the Court.[3] (Nov. 21, 2016 Hr'g Tr. at 23–25.) At that hearing, Schmitz stated that he had an opportunity to discuss these appellate options and waivers with Wolter and that he knowingly and voluntarily agreed to them. (*Id.*)

And for the sake of argument, even if there was compelling evidence that Wolter did not sufficiently inform Schmitz of his right to bring a post-conviction collateral attack, such a deficiency did not preclude Schmitz from doing so, as evidenced by the instant petition. As there is no evidence or argument that this error prejudiced Schmitz, his claim of ineffective assistance of counsel fails.

### 3. Selective Prosecution

Schmitz also argues that his counsel was ineffective for failing to challenge his allegedly selective prosecution. Schmitz contends that he was selectively prosecuted on account of his sexual orientation and gender. (Def.'s Mem. at 7–11.) Specifically, he argues that Meeker County prosecutor Brandi Schiefelbein prioritized prosecuting

---

[3] The transcript for this hearing reflects that while counsel for the Government initially inadvertently misstated the terms of the appellate rights waiver, the misstatement was corrected, and Schmitz expressed his understanding of the correct statement of the waiver. (Nov. 21, 2016 Hr'g Tr. at 23–24.)

8

homosexual males in an attempt to garner political support for her campaign for Meeker County Attorney.[4] (*Id.* at 8.) In addition, Schmitz asserts that Schiefelbein directed Assistant United States Attorney Laura Provinzino to prosecute Schmitz in federal court, and that Schiefelbein "played an active part in the [D]efendant's federal prosecution." (*Id.* at 8.)

The standard for proving a claim of selective prosecution is undeniably "a demanding one." *United States v. Armstrong*, 517 U.S. 456, 463 (1996). Drawing on "ordinary equal protection standards" to prove a selective prosecution claim, "[t]he claimant must demonstrate that the federal prosecutorial policy 'had a discriminatory effect and that it was motivated by a discriminatory purpose.'" *Id.* at 465 (quoting *Wayte v. United States*, 470 U.S. 598, 608 (1985)).

To meet the two-pronged test to support a claim for selective prosecution, Schmitz must show "(1) that [he was] singled out for prosecution while others similarly situated were not prosecuted for similar conduct; and (2) that the decision to prosecute was based on an impermissible motive such as race, religion, or an attempt by the defendant to secure other constitutional rights." *United States v. Huff*, 959 F.2d 731, 735 (8th Cir. 1992) (citing *United States v. Holmes*, 794 F.2d 345, 347 (8th Cir. 1986)). The defendant bears the burden of establishing that the government engaged in selective prosecution.[5] *United*

---

[4] Schmitz also argues that Schiefelbein prioritized prosecuting homosexual male defendants who had heterosexual victims over homosexual male defendants who had homosexual victims. (Def.'s Reply at 7 [Doc. No. 47]).

[5] Further, a defendant seeking discovery regarding his selective prosecution claim must present some evidence that tends to show the existence of both elements. *Armstrong*, 517

9

*States v. Hirsch*, 360 F.3d 860, 864 (8th Cir. 2004) (citing *United States v. Kelley*, 152 F.3d 881, 885 (8th Cir. 1998)). "The 'evidentiary burden is a heavy one.'" *United States v. Peterson*, 652 F.3d 979, 981 (8th Cir. 2011) (quoting *United States v. Leathers*, 354 F.3d 955, 961–62 (8th Cir. 2004)).

Schmitz has not presented evidence of the two *Huff* elements, nor has he brought forth "some evidence" of discriminatory effect and intent to warrant discovery. First, Schmitz has failed to show that persons similarly situated to him were not prosecuted for similar conduct. "Defendants are similarly situated when their circumstances present no distinguishable legitimate prosecutorial factors that might justify making different prosecutorial decisions with respect to them." *United States v. Heying*, No. 14-cr-30 (JRT/SER), 2014 WL 5286153, at *12 (D. Minn. Aug. 15, 2014), *report and recommendation adopted*, 2014 WL 5286155, at *1, 7 (D. Minn. Oct. 15, 2014); *see also United States v. Smith*, 231 F.3d 800, 810 (11th Cir. 2000) (holding that individuals are similarly situated for purposes of a selective prosecution claim when, among other requirements, they "committed the same basic crime in substantially the same manner as the defendant . . . so that any prosecution of that individual would have the same deterrence value and would be related in the same way to the Government's enforcement priorities and enforcement plan"). Moreover, the evidence against the unprosecuted person must be "as strong, or stronger, than that against the defendant." *Smith*, 231 F.3d at 810–11.

---

U.S. at 468. "The justifications for a rigorous standard for the elements of [a selective prosecution claim] thus require a correspondingly rigorous standard for discovery in aid of it." *Id.*

Here, Schmitz asserts that when he was a minor, he was solicited "for sex and coerced into making child pornography by multiple adult males through online social media forums." (*See* Def.'s Mem. at 2.) He contends that these perpetrators were similarly situated to him, yet Meeker County law enforcement officers did not prosecute them. (*See id.* at 3, 9, 11; Def.'s Reply at 7.) In support of his contention that he was singled out for prosecution, he submits a November 2015 letter from his state public defender, Brian Olsen, to Schiefelbein, in which Olsen refers to "perceived inconsistencies in the plea proposals policies of [Schiefelbein's] office." (*See* Def.'s Mem., Ex. 11 (Nov. 2, 2015 Letter [Doc. No. 34-1]).) The letter concerns two other named criminal defendants (also Olsen's clients) and "assorted other drug and sex offender cases." (*Id.* at 1.) The references to these other clients and cases do not make clear whether the defendants or their victims are heterosexual or homosexual, nor can the Court determine if these other defendants committed the same crime in substantially the same manner as Schmitz. (*Id.* at 1–2.) Nor does a newspaper article that Schmitz submits provide any evidence of selective prosecution. Rather, the article merely states that Schiefelbein was one of two qualified candidates for Meeker County Attorney. (*See* Ex. to Def.'s Mem. (Litchfield Newspaper Article [Doc. No. 34-1 at 51]).) Finally, the charge against Schmitz in federal court involved a particular manner of blackmail that is not detailed in any of Schmitz's evidence of similarly situated comparators.

And even if this evidence somehow demonstrated differential treatment by Meeker County—which it does not—Schmitz presents no evidence to support his claim that Schiefelbein directed Provinzino, a prosecutor in a separate branch of government, to prosecute him in federal court. Contrary to Schmitz's assertions, the evidence shows that the

impetus for Schmitz's federal prosecution came from federal court, not Meeker County: a federal defendant, also prosecuted for child pornography, made a detailed proffer to Provinzino in which he implicated Schmitz in child pornography offenses.[6] (Gov't's Opp'n at 7 [Doc. No. 42].) Provinzino's decision to prosecute Schmitz on a federal child pornography charge was entirely separate and independent from Schiefelbein's decision to prosecute Schmitz for state criminal sexual conduct offenses. In fact, as the Government notes, the U.S. Attorney's Office would have no jurisdiction to prosecute Schmitz for the state court charges of criminal sexual conduct, unless the offenses occurred on federal land. (*Id.*) It was only after Provinzino decided to prosecute Schmitz in federal court and sent a target letter to Schmitz via his counsel in federal court, Wolter, that Provinzino initiated contact with Schiefelbein to discuss a global resolution of the case. (Provinzino Sealed Decl. ¶ 11 [Doc. No. 43].)

Moreover, Provinzino met with Schmitz at a proffer concerning the identification of Schmitz's victims and the identification of other potential targets, including men whom Schmitz claimed had victimized him as a minor. (*See id.* ¶¶ 6, 10.) Her actions in doing so demonstrate a willingness to investigate others who may have victimized Schmitz, not differential treatment of Schmitz. Further, the quality of the evidence against Schmitz was significantly stronger than the evidence proffered by Schmitz against his alleged abusers. *Smith*, 231 F.3d at 810–11. As Provinzino explains, the information that Schmitz provided

---

[6] Schmitz submits a declaration in which he disputes the information that he allegedly conveyed to the other federal defendant, a former fellow Meeker County Jail inmate, which prompted the federal investigation of Schmitz. (Schmitz Decl. at 1–2 [Doc. No. 51].)

was either outside the scope of federal jurisdiction (as it concerned criminal sexual conduct), or lacking the detail needed to pursue an investigation. (*See* Gov't's Opp'n at 8 n.4) (citing Gov't's Mot. for Variance at 3 n.1 [Doc. No. 29]). The Court concludes that these issues are clearly "distinguishable legitimate prosecutorial factors" that preclude a finding that persons similarly situated to Schmitz were not prosecuted for similar conduct.

Nor has Schmitz satisfied the second *Huff* factor for selective prosecution, by providing evidence that prosecutors acted with a discriminatory purpose. *Huff*, 959 F.2d at 735. To establish discriminatory purpose, a defendant must show "a constitutionally impermissible motive prompting the prosecution." *Leathers*, 354 F.3d at 963. Here, Schmitz argues that the alleged constitutionally impermissible prosecutorial motive was discrimination against his sexual orientation and gender. Assuming that prosecution on the basis of sexual orientation is a constitutionally impermissible motive,[7] this argument fails. Again, neither Schmitz's letter from Brian Olsen to Schiefelbein, nor the newspaper article on county attorney candidates, suggests that gender or sexual orientation discrimination prompted his prosecution.

Based on the foregoing, there is no cognizable claim of selective prosecution in this case. Accordingly, Schmitz fails to demonstrate any deficiency on the part of his attorney to forego this argument. *Strickland*, 466 U.S. at 687. Nor has Schmitz demonstrated any

---

[7] The Court notes that at least the Sixth Circuit has persuasively concluded that prosecution on the basis of sexual orientation is constitutionally impermissible, stating "the proposition that the state may constitutionally discriminate by enforcing laws only against homosexuals . . . is not now, and never has been, the law." *Stemler v. City of Florence*, 126 F.3d 856, 874 (6th Cir. 1997).

resulting prejudice. Accordingly this basis for his claim of ineffective assistance of counsel fails.

**4. Federal Jurisdiction**

Schmitz's argument concerning his counsel's alleged failure to challenge federal jurisdiction also fails. Under 18 U.S.C. § 2251, it is a crime to use materials "mailed, shipped, or transported in or affecting interstate or foreign commerce" to "produc[e] any visual depiction" of "any sexually explicit conduct" involving a minor. Schmitz's use of a cellphone manufactured in Asia to produce child pornography falls squarely within this statute. *See United States v. McCloud*, 590 F.3d 560, 568–70 (8th Cir. 2009) (convicting a defendant under § 2251 who produced child pornography and saved it on a memory card manufactured in Taiwan). Schmitz's crime thus satisfies the requirements of the Commerce Clause and § 2251(a). Wolter did not act unreasonably by failing to pursue a losing jurisdictional argument.

In sum, the Court concludes that the evidence presented is not sufficient to overcome the "strong presumption of adequate assistance," nor is the evidence sufficient to demonstrate that any deficient performance by Wolter prejudiced Schmitz's case. Accordingly, Schmitz's claim for relief based on ineffective assistance of counsel fails.

**B. Vindictive Prosecution**

As noted, Schmitz argues that he was vindictively prosecuted by Provinzino at Schiefelbein's direction and in conspiracy with her. (Def.'s Mem. at 11–19.) Schmitz alleges that he exercised a constitutional right by pleading guilty, or attempting to plead guilty, to a state crime, but Schiefelbein engaged in "venue shopping" to obtain a longer

possible sentence in federal court. (*Id.* at 18) ("The decision to move to the federal venue was done for one reason: Title 18 U.S.C. § 2251(e), a 180-month mandatory minimum.").

There are two ways in which a defendant may demonstrate prosecutorial vindictiveness. *United States v. Beede*, 974 F.2d 948, 951 (8th Cir. 1992). First, a defendant can present objective evidence that a prosecutor intended to punish him for exercising a legal right. *Id.* (citing *United States v. Goodwin*, 457 U.S. 368, 384 n. 19 (1982)). Second, "[a] defendant is entitled to a presumption of vindictiveness where there exists a reasonable likelihood of vindictiveness, which may arise when prosecutors increase the number or severity of charges." *United States v. Campbell*, 410 F.3d 456, 461 (8th Cir. 2005) (citing *United States v. Rodgers*, 18 F.3d 1425, 1429–30 (8th Cir. 1994)). *Accord Beede*, 974 F.2d at 951. A presumption of vindictiveness is rarely applicable. *Campbell*, 410 F.3d at 462.

Under both alternatives, the defendant bears the burden to establish vindictiveness. *Hirsch*, 360 F.3d at 864 (citing *Kelley*, 152 F.3d at 885). "The defendant's evidentiary burden is a heavy one," and the Court must remain "mindful of the broad discretion given to prosecutors in carrying out their duty to enforce criminal statutes." *Leathers*, 354 F.3d at 961 (citing *Kelley*, 152 F.3d at 885–86); *see also Goodwin*, 457 U.S. at 382 ("A prosecutor should remain free before trial to exercise the broad discretion entrusted to [her] to determine the extent of the societal interest in prosecution."). Part of the defendant's burden is to show that he was prosecuted as punishment for exercising a legal right. *See id.*; *see also Campbell*, 410 F.3d at 461, 462 ("It is the defendant's burden to show that the prosecution was brought *in order to punish the defendant for the exercise of a legal right* .

15

. . A presumption does not arise just because action detrimental to the defendant was taken *after the exercise of the defendant's legal rights*; the context must also present a reasonable likelihood of vindictiveness.") (emphasis added). If a prosecutor revises or adds charges merely because of new evidence or another objective reason, there is no presumption of prosecutorial vindictiveness. *Campbell*, 410 F.3d at 462; *United States v. Schwalb*, 83 F.3d 1039, 1040 (8th Cir. 1996).

As to the first method by which Schmitz could demonstrate prosecutorial vindictiveness, i.e., through objective evidence, evidence is considered "objective," if any reasonable observer would conclude that a prosecutor intended to punish Schmitz for exercising a legal right. *See, e.g.*, *Campbell*, 410 F.3d at 462 ("An example of objective evidence of a vindictive motive would be a prosecutor's statement that he or she is bringing a new charge in order to dissuade the defendant from exercising his or her legal rights."). Here, however, Schmitz has failed to present any such objective evidence that a prosecutor intended to punish him for exercising a legal right.

Regarding the second way to establish prosecutorial vindictiveness, Schmitz bears the heavy burden to show that there exists a "reasonable likelihood of vindictiveness." *Id.* at 461. He fails to meet this burden. The crux of his claim is that Schiefelbein acted to increase Schmitz's punishment after his state court plea deal fell through.[8] But the

---

[8] While Schmitz claims that he exercised a constitutional right by pleading guilty, or attempting to plead guilty, to a state crime, (Def.'s Mem. at 11-19), the Court is not persuaded that the act of pleading guilty constitutes the exercise of a constitutional right. Numerous Supreme Court cases characterize a guilty plea as a *waiver* of rights, not an *exercise* of rights. *See, e.g.*, *McCarthy v. United States*, 394 U.S. 459, 466 (1969) ("A defendant who enters such a plea simultaneously waives several constitutional rights,

16

Supreme Court has expressly rejected this as a basis for finding prosecutorial vindictiveness:

> Since charges brought in an original indictment may be abandoned by the prosecutor in the course of plea negotiation—in often what is clearly a "benefit" to the defendant—changes in the charging decision that occur in the context of plea negotiation are an inaccurate measure of improper prosecutorial "vindictiveness." An initial indictment—from which the prosecutor embarks on a course of plea negotiation—does not necessarily define the extent of the legitimate interest in prosecution. For just as a prosecutor may forgo legitimate charges already brought in an effort to save the time and expense of trial, a prosecutor may file additional charges if an initial expectation that a defendant would plead guilty to lesser charges proves unfounded….
>
> *There is good reason to be cautious before adopting an inflexible presumption of prosecutorial vindictiveness in a pretrial setting.* In the course of preparing a case for trial, the *prosecutor may uncover additional information that suggests a basis for further prosecution* or he simply may come to realize that information possessed by the State has a broader significance. At this stage of the proceedings, the prosecutor's assessment of the proper extent of prosecution may not have crystallized.

*Goodwin*, 457 U.S. at 379–81 (emphasis added). As in *Goodwin*, federal prosecutors here were presented with additional evidence against Schmitz that supplied the basis for the federal charges against him. (Gov't's Opp'n at 7.) The Government's actions based on that new evidence do not demonstrate vindictiveness.

Further, Schmitz's claim of vindictiveness on the part of Schiefelbein is not supported by any evidence. Notably, there is no evidence in the record to suggest that Schiefelbein was angry at the failed plea deal or at Schmitz in general. Indeed, Schiefelbein

---

including his privilege against compulsory self-incrimination, his right to trial by jury, and his right to confront his accusers."); *Fla. v. Nixon*, 543 U.S. 175, 187–88 (2004) ("By entering a guilty plea, a defendant waives constitutional rights that inhere in a criminal trial.").

agreed to the initial plea deal in state court, which carried a lower punishment than the charge brought in federal court. But to suggest that Schiefelbein vindictively "venue shop[ped]" in response to the failed state court plea deal, (Def.'s Mem. at 13), ignores the fact that Schiefelbein agreed to the initial plea deal in the first place.

Moreover, even if Schiefelbein had acted vindictively towards Schmitz after the failed plea deal, Schmitz has presented no evidence that Schiefelbein's actions influenced the behavior of Provinzino or the U.S. Attorney's Office. As described above, Provinzino uncovered evidence and brought charges against Schmitz independently, not at the direction of the Meeker County Attorney's Office. (*See* Sealed Provinzino Decl. ¶¶ 2, 3, 11–14.) Nothing in the record suggests that Schiefelbein directed or influenced Provinzino's decision to bring charges against Schmitz. Nor has Schmitz advanced any argument or proffered any evidence to explain why Provinzino purportedly prosecuted him vindictively.

As the Court concludes that there is not a "reasonable likelihood of vindictiveness," there can be no presumption of vindictiveness in this case. Accordingly, Schmitz's claim for relief fails on this basis.

## C. Evidentiary Hearing

A § 2255 motion may be dismissed without a hearing if: (1) Defendant's allegations, if accepted as true, would not entitle him to relief; or (2) the allegations cannot be accepted as true because they are contradicted by the record, are inherently incredible, or are conclusions, rather than statements of fact. *Delgado v. United States*, 162 F.3d 981, 983 (8th Cir. 1998). Moreover, where the record includes all of the information necessary for

the court to rule on the motion, an evidentiary hearing is unnecessary. *Covey v. United States*, 377 F.3d 903, 909 (8th Cir. 2004) (citations omitted). Applying this standard to the allegations and the record, the Court finds that the record here includes all such information. Accordingly, no evidentiary hearing is required in this case.

### D. Certificate of Appealability

In order to appeal an adverse decision on a § 2255 motion, a movant must first obtain a certificate of appealability. See 28 U.S.C. § 2253(c)(1)(B). A court cannot grant a Certificate of Appealability unless the applicant has made "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(3). This Court has considered whether the issuance of a certificate is appropriate here and finds that no issue raised is "debatable among reasonable jurists." *Flieger v. Delo*, 16 F.3d 878, 882–83 (8th Cir. 1994) (citing *Lozada v. Deeds*, 498 U.S. 430, 432 (1991) (per curiam)). Accordingly, the Court declines to issue a certificate of appealability.

### E. Request for Subpoena & Motion for Appointment of Counsel

In connection with his § 2255 Petition, Schmitz seeks a subpoena in order to obtain certain discovery. In addition, he moves for appointment of counsel. Because the Court has found that none of Schmitz's § 2255 claims are viable, his Request for a Subpoena and Motion for Appointment of Counsel are denied as moot.

### IV. CONCLUSION

Based upon the foregoing, and all the files, record, and proceedings herein, **IT IS HEREBY ORDERED** that

1. Defendant Schmitz's Motion to Vacate Pursuant to 28 U.S.C. § 2255 [Doc. No.

33] is **DENIED**;

2. Defendant Schmitz's Request for a Subpoena [Doc. No. 48] is **DENIED** as moot.

3. Defendant Schmitz's Motion for Appointment of Counsel [Doc. No. 49] is **DENIED** as moot.

4. No evidentiary hearing is required in this matter; and

5. A Certificate of Appealability is **DENIED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: February 14, 2019

                                         s/Susan Richard Nelson
                                         SUSAN RICHARD NELSON
                                         United States District Judge